STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION AND SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, APPLICANT v. RUFUS L. EDMISTEN, ATTORNEY GENERAL

No. 7610UC476

(Filed 1 December 1976)

Telephone and Telegraph Companies § 1; Utilities Commission § 6— telephone rates — charge for directory assistance
    In fixing the schedule of rates and charges of a telephone company, the Utilities Commission acted within its authority in providing for a charge of twenty cents for each local directory assistance request by a subscriber in excess of five requests per month.

APPEAL by the Attorney General (Intervenor) from an order of the North Carolina Utilities Commission entered on 19 December 1975. Heard in the Court of Appeals 19 October 1976.

On 19 July 1974, Southern Bell Telephone and Telegraph Company filed an application with the Utilities Commission seeking an adjustment in its rates and charges. The Commission set the application for hearing as a general rate case and suspended the proposed rate adjustment. Interim rate relief was denied. Southern Bell filed two schedules of rates and charges, each of which was designed to produce about $45,-

184,246.00 in additional revenues. Under one of the proposed schedules the cost of providing directory assistance service would have been recovered in the basic rates. Under that schedule, as in the past, the entire cost of directory assistance would have been borne by the company subscribers as a whole without regard to whether a particular subscriber used directory assistance service. In the other, a portion of that cost was taken out of the basic rate and a separate charge placed on certain local directory assistance inquiries.

The Commission disallowed rate adjustments which would have increased revenues by $45,184,246.00, but allowed adjustment in rates and charges that are calculated to produce $28,-148,633.00 in additional revenues.

The Commission had previously issued orders recognizing the intervention of the Attorney General, the Department of Defense and all other executive agencies of the United States, the North Carolina Merchants Association and the American District Telegraph Company. Only the Attorney General has appealed.

*Attorney General Edmisten, by Special Deputy Attorney General Robert P. Gruber and Associate Attorney Jerry B. Fruitt, for the State.*

*North Carolina Utilities Commission, by Commission Attorney Edward B. Hipp and Associate Attorney Antoinette R. Wike, for plaintiff appellee.*

*Joyner & Howison, by Robert G. Howison, Jr., and R. Frost Branon, Jr., attorneys for plaintiff appellee, Southern Bell Telephone & Telegraph Company.*

VAUGHN, Judge.

The Attorney General does not contend that the total amount of additional revenues, $28,148,633.00 is excessive. He only contests the structure of one of the many rates and charges that make up the approved rate schedule. That attack is on the portion of the order wherein the Commission seeks, in summary: to take part of the cost of directory assistance off of the customer who does not use the directory assistance service and place it on those who do; to reduce the total cost of providing directory assistance service by discouraging wasteful, unnecessary

and abusive use of the service and pass the savings along to all subscribers.

Finding of Fact No. 19 is as follows:

> "19. That charging for directory assistance is an appropriate means of requiring those subscribers who use the local directory assistance service to pay a portion of the costs incurred to provide the service."

There was ample evidence to support the finding of fact. The Commission summarized some of the evidence and its conclusions, and therefore, we think it is appropriate to quote part of the Commission's summary:

> "Based on the foregoing analysis, the Commission concludes that charges for directory assistance inquiries are an appropriate method of allocating to subscribers a portion of the cost of specific services used. It is unquestionable that a vast number of unnecessary calls are made for information that is readily available or can be made readily available on an ongoing basis. This practice is a burden on the general body of telephone rate-payers and is a hindrance to keeping basic charges for service as low as possible, which is in the best interest of all subscribers, especially those subscribers with marginal ability to maintain telephone service. The reduction of 82% of the directory assistance traffic at Cincinnati is a clear example of the fact that a D.A. charge, among other things, will cause telephone users to consult the directory for desired numbers and to record numbers once obtained from other sources. The Commission is of the firm opinion that requests for directory assistance create an identifiable cost which should be borne by those for whom it is incurred.
>
> The Commission concludes that a five (5) free call monthly allowance will adequately provide for the reasonable needs of nearly all subscribers and that a charge of $.20 for each local directory assistance request in excess of five (5) monthly per subscriber should be approved. The Commission further concludes that there should be no charge for toll directory assistance inquiries made outside the home area code. With respect to the toll directory assistance inquiries made within the home area code, a matching plan should be implemented and subscribers should be

Utilities Comm. v. Edmisten, Atty. General

allowed one free inquiry for each sent paid toll call to a number in the home numbering area."

(In a supplementary order the Commission provided that the directory assistance charge would not be applicable to subscribers or primary users who are blind or physically handicapped to the extent that they are unable to use the telephone directory.) We also take note of evidence tending to show that, under former schedules, the cost of directory assistance is presently borne by all subscribers even though the cost is caused by a relatively small percentage of the subscribers. (17% of the customers make 75% of all the calls to directory assistance; 54% of the subscribers originate less than 4% of the inquiries to directory assistance.) Many of the inquiries are made for numbers that are listed in the subscribers' own telephone directory.

We have considered all of the assignments of error brought forward by the Attorney General and conclude that they are without merit.

The findings of fact made by the Commission are supported by competent, material and substantial evidence. They are, therefore, conclusive. The rate schedules approved by the Commission are deemed prima facie just and reasonable. *Utilities Comm. v. Telephone Co.,* 281 N.C. 318, 189 S.E. 2d 705. Neither such findings of fact nor the Commission's determination of what rates are reasonable can be reversed or modified by a reviewing court simply because the court might have reached a different finding or determination upon the evidence. *Utilities Comm. v. Telephone Co., supra.* The rate structure ordered by the Commission will remain under the observation of the Commission and its staff of specialists. The order was made on the basis of the statistics then available. The Commission made it clear that the approved schedules would be subject to revision. In its supplementary order it noted:

"On December 19, 1975, the Commission issued its Order in this docket granting partial increases in rates and charges and providing for a directory assistance charge of twenty cents for each use of directory assistance over and above five uses per month on an experimental basis for a test year of calendar year 1976, with the requirement that Southern Bell Telephone and Telegraph Company (hereinafter called 'SOUTHERN BELL') report fully to the Com-

mission on all data relating to the directory assistance charge as provided in ordering paragraph 8 on pages 54 and 55 of said Order for one representative month each quarter for the four quarters of 1976.

\*          \*          \*

The directory assistance charge was authorized by the Commission for experimental purposes to determine the cost and effect of providing directory assistance service and the reasonableness of imposing a separate charge for such service."

In fixing the schedule of rates and charges of a public utility, the Commission is exercising a function of the legislative branch of government. There is no showing on this record that the Commission has acted other than within the scope of the authority delegated to it by the Legislature or that it has exceeded the limitation imposed upon the Legislature by the State or Federal Constitutions. The order is, therefore, affirmed.

Affirmed.

Judges BRITT and MARTIN concur.